So we're now going to hear an argument in the case of Taylor & Lieberman v. Federal Insurance Company. Counsel? Good afternoon, Your Honors. My name is Jeff Williams. I represent the appellant Taylor & Lieberman. I'm going to do my best to reserve about four minutes for rebuttal, but I'll keep an eye on the clock. Okay. As the Court knows, there are two primary issues in this appeal. The first is whether or not the insured Taylor & Lieberman suffered a quote-unquote direct loss under the terms of the policy with FIC. The second is whether that loss was otherwise covered under the insuring clauses of the policy for forgery, computer fraud, and funds transfer fraud. How about the Bailey and Trustee exception? Are you going to mention that? Yes. Well, the Bailey and Trustee exception I think is a little unfortunately named, but it gets to the question of direct loss. And I think I may as well just dive directly into that issue, Your Honor. The Bailey and Trustee exception is not so much an exception as it is an enunciation of how the policy language works. So on these types of policies, we have coverage for losses to property that are covered under the policy. Those are sometimes referred to as first-party claims. The policies do not provide coverage for what can only be described as liability to a third party. So when we're talking about losses to covered property, and we're looking at the ownership clause of the policy, which is in the excerpts of record at page 75, we see that covered property under the policy includes money, securities, and property that is either one, owned by the insured, two, held by the insured in any capacity, or three, for which the insured is legally liable. So when we're talking about the Bailey and Trustee exception, I think what the courts have tried to do is resolve this issue with respect to property that's not owned by the insured, which is of course... And I gather in this case, you agree it's not your property. Agreed. The funds were in your client's account. Agreed. But you had a power of attorney, and it was subject to some, what I consider to be undisclosed limitations. I don't know what those limitations were. Do they bear in any way on their right to dispose of the money? I believe the power of attorney does give the Taylor and Lieberman the right to dispose of the money in the account in the manner which it sees fit. Of course, the relationship between the parties was one of agency. There was a fiduciary responsibility to the client. If that's the case, and they thought, oh, well, we got this instruction, and we see fit to send it to Malaya, we see fit to send it to Singapore, would there be any liability there? Well, I think in that fact scenario, I'm assuming there would be no e-mail. I guess what I'm trying to understand is are the limitations on the power of attorney such that even given the fraudulent nature of the instructions that were received in the third party, would they nonetheless have had the right to send those off without liability? I believe that that would be subject to their fiduciary duty to the client. So if that had happened, then we may say that the liability in court by Taylor and Lieberman would be in the nature of third party. Okay, but, again, I'm just trying to understand. Sure. If your client thought, which it obviously did, that it was receiving instructions from its clients and it acted in compliance with those, then you would look to whether the language in the power of attorney would have permitted them in good faith to do that, even if they're wrong. I mean, we're kind of flying blind here, but I think it's important in terms of this trustee Bailey exception. Because otherwise I don't see how you get around Vaughn, Vaughn's company. Well, Your Honor, I think Vaughn's is factually distinguishable. There was no property in Vaughn's that was held or even had anything to do with the insured. In that case, the transactions at issue were kind of fictitious diversion transactions, but there was no property. And I think that the relevant distinction- Well, this wasn't your client's property either, was it? Well, it wasn't owned by my client, but my client was legally liable for it. And I think the distinction pressed by FIC, and that was actually adopted by the district court, was the issue of possession. So there are cases in which, for example, the federal national financial case, the Alberts case, the issue in these cases was possession. The insured was possessing funds that belonged to their client. And in those cases, the courts found that the possession of these funds made them legally liable for it. But, you see, that-forgive me. What I'm struggling with is it's clear your client didn't have possession in the technical sense that the money was in their client's bank account. Yes. So then the question is how do they get access? Well, they were either a trustee or a bailee, presumably, because otherwise they wouldn't have access, right? Well, that's another thing about the trustee-bailee exception. I think a lot of the cases have noted that the words trustee and bailee are examples of that type of relationship. But I don't think-I wouldn't say in this case- Well, you're saying that there's a fiduciary duty, right? Yes, yes. So isn't that a trustee-type relationship? Yes, it's tantamount to being a trustee. Okay, so if they're trustees, then you examine exactly what the nature of that relationship is. If you're a bank, for example, and you have somebody's trust account, and it's a true trust, it's their account, and you receive an instruction purportedly from them and you send it off, and all the earmarks have been for real, and let's just say that in instructions it said you are instructed to follow any written instructions you receive. And if they did that, would they be liable? Well, would they be liable for the property? Yes, I think they would be liable for the loss of- Even if they followed the instructions given to them by, in my example, the owner of the account. Well, if they were following those instructions, there would be no crime. The issue here is that there was a crime directed at Taylor and Lieberman. Right. But as you say, Taylor and Lieberman thought that they were doing what the client wanted, right? Yes. They acted in good faith. Yes, Your Honor. It wasn't a fraud. They weren't connected in any way to the people in Singapore and Malaya, right? Correct. Okay, so under the circumstances then, they acted in good faith, it wasn't their money, they thought they were complying with their client's instructions. Under the circumstances, how has that been a direct loss under the classification in bonds? Well, I think the cases instruct that covered property in this case would include the funds that were in this account. And because they were covered property, there would be a direct loss attributable to Taylor and Lieberman. Now, the loss could also be characterized as a liability to a third party. But I think in every one of these cases, if loss could be characterized as liability to a third party, if it can also be characterized as loss to covered property, there is coverage. Does the record have any indication of previous instructions received by Taylor and Lieberman from third parties that actually were in keeping with their client's intentions? I don't believe so. I think the record reflects two. This was a one-off deal. Well, there were two fraudulent e-mails of the three fraudulent e-mails, two of which were acted upon, and then the third, my client kind of sniffed out. It became suspicious. But what I'm trying to understand, though, was were there others that are shown in the record? No, not to my knowledge. Not at all. Was your client held? Were you sued? Did you have to? I'm just curious. No, my client was not sued. My client voluntarily reimbursed the client. Doesn't that undermine your claim, though? I mean, I understand from a professional perspective why they would do that. But if there had been a lawsuit under the terms of the power of attorney, would they have been liable? Yes. Yes, I believe they would have. But the issue, again, like I said, the cases make clear that, you know, if the loss is to covered property, which it was here, then the fact that you may also characterize the loss as one of third-party liability isn't dispositive. For example, in Fidelity National Financial, there was actually, as Your Honor indicated, there was a lawsuit in that case. Fidelity National Financial settled the lawsuit and then sought coverage for their losses. The court found that coverage was appropriate in that case, given that the loss was to covered property. I think the distinction in this case that's maybe not dealt with in the case law is, how do you deal with funds that are in an account that belongs to a client, but for which there's a fiduciary relationship by the insurer? And I think the three cases probably most on point are the Cedar Lake case, the District of Oregon case, the first defiance case, which we submitted as supplemental authority last week, and I apologize for the tardiness of that. Both those cases came out on the side of the insured. There's also the Lynch Properties case, which on similar facts came out in favor of the insurer. I think that all those cases deal with funds that were in a client account for which the insured exercised some sort of, you know, control over the account. In Cedar Lake and in first defiance, the court specifically noted that there was a fiduciary and agency relationship. But then you are relying upon the trustee slash Bailey exception to bonds, are you not? And those cases did the same? Yes, Your Honor. So if you can't qualify for that, then you lose under bonds, right? Not a direct, except for that exception. That's a fair statement, Your Honor. I think the only quibble I would have with that is that, you know, the trustee Bailey exception really is not so much an exception as it is just kind of an explanation of what covered property is. Do you want to save some of your time there, counsel? It's up to you. Yes, yes, absolutely. Thank you, Your Honor. We'll hear from the Federal Insurance Company. Good afternoon, Your Honors. I'm Gary Valeriano of Anderson, McFarland & Connors. I represent the Federal Insurance Company. May it please the Court. For the first time here today, the plaintiff has cited the ownership provision of the insurance policy in question. Up to this point, when I was going through the various briefs, I noticed that in their briefs they had not cited that, even though we had. And I think that is fundamental to this case because what they say in their brief, which the Court has alluded to, this is at page 9 of their original brief, the opening brief, the trial court ignored an important extension of the direct loss rule where the insured is a Bailey or trustee of property because it has, and then in quotes, legal responsibility for the property. Now, I got the impression that plaintiffs thought that this was some sort of exception created by the Vons court, and it is not. And if I can quote the Vons court, the Vons court said, the problem with the argument is that it is founded on the interest clause of the policy, not the insuring agreements. By its plain language, I'm sorry, under the insuring clauses, Vons is covered only for direct losses to Vons caused by its employees' dishonesty. The point is that it raised the ownership provision, which is significant, and counsel has now alluded to that. The ownership provision says the covered property here is money, securities, or property, but only money, securities, or property which is owned by the insured, which is held by the insured, and for which the insured is legally liable. Now, owned by the insured is clearly out of the cards here. It's not a question. Held by the insured is that very Bailey exception that the Vons court was alluding to, and we don't have that here. It says held by the insured organization in any capacity. It does. It does. Any capacity. In any capacity. But that's what the Vons court was interpreting, I believe, that same ownership provision. I'm not sure if it was exactly the same, but it was a federal policy involved there. However, I think what the court was doing was giving, as counsel has said, an example of what we mean by held, and the two cases cited by them, the Alberts case, very simple example, I go to a hotel. I give my money to the clerk. He puts it in the safe. I come back. It's gone. They held the money. There's coverage in that case for the hotel because it's gone. The other case, the Gibralko case, which they cite, I'm a securities firm. I am holding bonds for my client. My employee makes off with those bonds. I am responsible for that because I held those bonds. I think the same thing is true in the Fidelity National case. In that case, we have an escrow. In the escrow situation, I think it was Chicago Title took the funds and took Title to the property, kept it in their escrow account, which was under the name of Chicago Title, and the fiction of escrow, of course, is I'm giving you something. You're going to hold it until the appropriate time. If it disappears before that time, yes, you're going to be liable for that. Those all fit in here. The trustee example, I think, is a good case where we talk about money for which you are legally liable. In the trustee situation, you have somebody giving you as a trustee money or property. It is held in your name as trustee. You have an obligation. With respect, your opposing counsel has conceded here, which I did not, frankly, get in the briefs, that he's entitled to relief, his client's entitled to relief based upon the Bailey slash trustee exception, and only that, if I understood him correctly. So if that's correct and he says the point is that his client would be legally liable, what's the difference between the hotel example, the old law school ostensible authority situation, and what happened here where you had somebody that was a con person, the equivalent came to the hotel desk and said, hey, that's mine. I want you to give it to me. What's the difference between that and somebody sending an e-mail saying send it to Singapore? Well, the difference is, of course, in the first case, in the hotel situation, you have an actual bailment. That is where I am entrusting you with property, physical property. A trustee then. It's trustee bail. In other words, held in any capacity, as my colleague has referred to. In this case, they don't actually have the account, but they have the ability to direct the monies in the account, and it's a fiduciary relationship, is it not? It may be a fiduciary relationship. Let's hypothetically say that it is. How do you get out from under that exception here? Well, the ownership provision requires that it be held in any capacity. If you're saying it's held by Taylor and Lieberman, well, factually it's not. The money is in the client's name, not Taylor and Lieberman's. They can dispose of it at any time, apparently. But there's also that legal fiction. Remember, this is a power of attorney. They are not trustees. They're not given the property. You're saying that a power of attorney does not involve a trustee relationship as this situation is described? Correct. It may involve a fiduciary relationship, but it does not involve a trustee relationship. Well, let's say it's a fiduciary relationship. That's still in any form. But legally, when the gentleman at Taylor and Lieberman who has the power of attorney says to the bank, please transfer that money to this account in Singapore, he is acting in the name because he has power of attorney. He is acting in the name of the client. He is not acting in the name of Taylor and Lieberman. That's the difference between a power of an attorney and a trustee, I think. Can I give you an analogy? I put my coat in a locker, if they still have lockers in train stations. In Brooklyn. I'm not sure. And I give you the key to the locker. Who is in possession? Well. I mean, it seems to me that as far off as that analogy may be, it really gets to what's at the heart of the case. Because, in effect, you could say with the key, you could go to the locker and get my coat. But yet you do not have possession of the coat. And that seems to me is what's really happened here. I guess that would depend on the legal relationship. I mean, if I'm somebody off the street that you've given the key to, well, then I suppose that creates a problem. But what you're saying is if I'm somebody you entrust and you give me the key, well, here's the way I would handle that example. If you give me the key and your coat's in that locker, and that locker is broken into, and somebody takes your coat, am I responsible for that? I don't think so. I think what's going to have to happen is you're going to sue me, saying that I'm responsible. I'm going to defend myself, saying my negligence may have been part of it, but your negligence and leaving it in a train station in a locker is part of it. And, therefore, we're going to fight this out, and eventually I may win and I may lose. That's the exact same thing here. But if you have the key, and suppose one of your employees takes the key, or is defrauded into giving somebody the key, who... I mean, it seems to me that what strikes me about this is sort of the artificial nature of the distinction that you're drawing about physical possession, when, you know, you're talking about intangible property and pieces of paper that probably don't even exist, and, you know, all these transactions going by emails. I mean, it just strikes me that the distinction you're drawing is sort of pretty thin. Well, be it thin or not, it is the exception, I'm sorry, it is the condition set forth in the policy, and courts have adhered to that. The case... The word, the critical word in the policy, as I, if I understand your argument correctly... It's in Section 4... Subsection 3. No, well, Section, I've got... Coverage extended to money, securities, or property held by the insured organization in any capacity. And the word held is, you're saying, has to be physical. Yes, I'm saying that, yes. And that's what, that's where the bailment, that's where the Vaughn situation comes in, and the case is cited. For the other case... If you were to lose this case, all you would do is change the policy next time. That's not up to me. No, but I mean, that's the reality. It's up to the client, yes. I have only one practical question. How much money is at stake here? Is it $93,000? I think at the end of the day, it was $90,000. Does it actually pay to litigate a case to the Ninth Circuit Court of Appeals over $93,000? You probably don't care. This, well... I look at this as a district judge. If I were sitting in the district court, I'd say, turn the machine off, and why can't we settle this case? You know, Your Honor, it's happened before me. I mean, the idea of litigating this case was to, it was a stipulated set of facts. It was mutual or cross-summary judgments. There was really no discovery taken in the case. It's a very simple answer or question of, how do you interpret this policy? And I think Vaughn's has already interpreted this policy, and I think... if you will, an opinion that will flush out the meaning of this policy. Well, it is a question of law, of course. And so if that's the case and the insurance company drafted the policy, do we construe it strictly against the drafter? Well, that's one of the rules of interpretation, but you have to find an ambiguity in there. And I would say that the Vaughn's case shows that there is no ambiguity. And the other cases have all held the same way. If I could just discuss some of the cases. Actually, if I could just jump in here. It seems to me there's a whole other reason why you're arguing you should win the case. Put the whole direct loss debate aside. Why was this covered? And this is really a question for opposing counsel. But your argument, as I understand it, is that none of this was covered anyway, right? Eventually, if we were to go back, I think we would prevail on summary judgment on all of the coverage issues. But if it's a purely legal question, as you've described in Limit Discovery, and make sure you're paying attention here, why can't we just affirm for a different reason and just say, well, it's not a computer violation, it's not forgery, it's not funds transfer fraud because they're not a financial institution. That's what you were asking for in your brief, right? Exactly. This court can rule on any alternative basis, and we have, therefore, briefed all of the coverage issues. They're very simple. There's three coverages. None of them apply. None of them are even close. And we think we've dealt with that, and certainly this court could make that decision. And if I recall correctly from the record, when this case was first teed up before the district court, that was the issue that you were pursuing, correct? More than the direct loss issue. We made the direct loss argument, but, yes, our primary focus was on there's just no coverage. Right. And so, again, as you described the record, if we were to agree with you on that issue, you would get the relief that you're looking for. Of course. I just want to make sure, because we had a lot of argument about direct loss, which I understand because that's what the district court ruled upon, but originally as this case was teed up, it was teed up more as a coverage case as opposed to direct loss. Absolutely. That is correct. And if I could just then briefly, because I'm running out of time, the other cases cited by the plaintiff, First Defiance and Cedar Lake, if you will look at those decisions, those decisions involve similar policies, but the language regarding the ownership provision is different. And in Cedar Lake, the account was actually held in the name of the insured. So very different from this. First Defiance actually covered third party monies. That was in the ownership provision. And I would just cite this court to a recent case, Texas Association of School Boards versus Travelers, which is 2016 Westlaw 4257748, which distinguishes the First Defiance case and explains the difference between that case, i.e. coverage for third party losses or for third party property or client property versus actual coverage for first party losses. And this case, with all due respect to the other side, this is the lynch case. The Fifth Circuit has held this. In that case, you had a company that had a fidelity policy. One of their employees, a bookkeeper, stole money from the owner's mother's account. They were responsible for handling the mother's account, but the account was in a bank under the mother's name, and the court said that is not a direct loss in the situation. I don't see any difference between that and this situation here. And you believe that there is no coverage under what we'll call the Bailey trustee exception here? Again, I take exception. It's not a Bailey trustee exception. Right. And no, there is not. Okay. And I think the case has backed me up. I'll just ask you one question relating to Judge Owen's question. What about the funds transfer provision? Why isn't that applicable here? The funds transfer provision requires that somebody impersonate the insured to effectuate the transfer. If you look at the coverage itself, it requires somebody to break in or utilize, steal, if you will, their password and their code and then make that transfer. In this case, they did not, the insured, did not make the transfer. The bank made the transfer, and the insured authorized that transfer. They may have authorized on the basis of false pretenses, but they authorized the transfer. So the funds transfer fraud requires an actual kind of subterfuge, somebody hijacking your account. They got this e-mail. I thought in the reply brief in this case, the issue was teed up as whether or not Taylor qualifies as a financial institution. And again, I'll be asking your opposing counsel this, but I thought they were saying that for them to prevail, we have to view them as a financial institution, and they were arguing as to the reasons why they should be viewed as a financial institution. Am I wrong on how that issue has been framed? They did make that argument, but the fact is they still authorized the transfer. But if we don't think Taylor is a financial institution, then they lose the argument. Oh, then of course, yes. All right. I have some questions for opposing counsel on that. Thank you. Thank you for your time. Thank you, counsel. So you have some rebuttal time, counsel. Well, Your Honor, I can start in on it, or I don't know if you'd like me to answer some of these questions. Please, because a financial institution has a lot of obligations, and I'm not sure Taylor and Lieberman really would want to have all of the legal obligations that a financial institution has for a $90,000 case. Maybe they do, but if you could just tell me why they would qualify under that policy as a financial institution. Well, Your Honor, financial institution isn't defined in the policy. It's not a defined term. I agree with you that Taylor and Lieberman probably doesn't want to be a bank that's regulated. Yeah. That's regulated by the OCC or something like that. But that's not what financial institution means in the context of this policy. But when you look at the policy, it says insured organization at such institution. It's envisioning two different things. It's envisioning the insured organization, which we all agree is Taylor, depositing money at a financial institution. How can it be the same thing? Well, I understand your point, Your Honor, and to that I would respond that the fraudulent email here, even if it was directed towards Taylor and Lieberman and you don't think that Taylor and Lieberman is a financial institution, you could also see it as the instructions going through Taylor and Lieberman to the financial institution since as a matter of practicality, they were essentially just forwarded along here. But the policy envisions that the insured organization and the institution are separate. In your brief, you said for you to prevail on this, we have to find Taylor and Lieberman to be a financial institution. Well, if that's what we said in our brief, I can't recall, then that's what we said in our brief. I do think that if you view financial institution as being the ultimate recipient of these instructions and them flowing through us, at least an argument can be made that that would work under the policy, and if there's an ambiguity and reasonable interpretations on either side, then that has to be construed against the argument. But that argument you just made, have you made that argument previously? I don't recall, Your Honor. I'm just looking at your brief here, and page 27 talks about the only disputes are whether Taylor and Lieberman qualifies as a financial institution and whether it knew of or consented to the fraudulent instructions. So if we say that's the only question and we disagree with you, I think now you're saying, well, you may still prevail for this new reason. That's what I'm saying, but I agree with you that if that's how it was teed up in our brief and you don't find us a financial institution, then that would be it, I would think. One thing that I did want to press, and this goes back to the issue of possession, a direct loss under the policy can be to property that is held in any capacity by the insured, but to interpret that as requiring possession, which my opposing counsel stated is the case, that would read the words legally liable entirely out of the policy. Legally liable has to expand upon held in any capacity, otherwise there would be no point. And I think the cases, again, I'll cite back to the first defiance in Cedar Lake cases, which I think stand for the proposition we're trying to make in this case. And yes, Cedar Lake was a case where the property was held in an account in the insured's name, but if you read that opinion carefully, the court says even in the absence of that, we would find that the agency and fiduciary relationship causes to be a covered loss. Let's see. I believe that would be it, unless Your Honor has any other questions. Any other questions? Thank you both, counsel. We appreciate it. The case just argued is submitted and the court stands in recess for the day. Thank you, Your Honor. All rise.
judges: M. Smith, Owens, Korman